UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOAQUIN AGUIAR-YANEZ, | No. CV 11-5686-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 11, 2011, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 15, 2011, and August 16, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 16, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## **BACKGROUND**

Plaintiff was born on June 9, 1952. [Administrative Record ("AR") at 48-49.] He has a sixth grade education and past relevant work as a manufacturing supervisor, a warehouse receiver, and a chief executive officer of a manufacturing company. [AR at 116, 119.]

On June 12, 2009, plaintiff applied for Disability Insurance Benefits, claiming an inability to work since November 1, 2006, due to hypertension, diabetes and related problems, back pain, osteoarthritis, prostatitis, blurry vision, and anxiety. [AR at 48-49, 92-98, 111-18, 146-52.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR 50-56, 61-66, 68-73.] A hearing was held on September 15, 2010, at which plaintiff appeared with counsel and testified on his own behalf through an interpreter. [AR at 26-47.] A vocational expert also testified. [AR at 36-40, 42, 45-46.] On October 29, 2010, the ALJ determined that plaintiff was not disabled. [AR at 18-22.] On May 26, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-11.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity during the period from his alleged disability onset date of November 1, 2006, through December 31, 2006, the last date that plaintiff meets the insured status requirements of the Social Security Act. [AR at 20.] At step two, the ALJ concluded that through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. [Id.] Accordingly, the ALJ determined that plaintiff was not under a disability at any time from November 1, 2006, through December 31, 2006. [AR at 22.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred by: (1) rejecting the opinion of Dr. Isaac Schmidt, an examining physician; (2) failing to call a medical expert to infer the onset date of any impairments plaintiff may have; (3) failing to properly consider the consultative examiner's opinion; (4) finding at step two that plaintiff did not have a severe medically determinable impairment during the relevant time period; and (5) failing to consider plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

/
/
/

**EXAMINING PHYSICIAN'S OPINION**

Plaintiff asserts that the ALJ improperly rejected the opinion of examining physician Dr. Isaac Schmidt. [JS at 3-7.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31.

On September 8, 2010, Dr. Isaac Schmidt, an orthopedic surgeon, performed an orthopedic consultation on plaintiff, and had x-rays taken. [AR at 201-05.] Upon examining plaintiff, Dr. Schmidt noted "palpable tenderness over the cervical spinous processes from C4 to C7, the trapezius, sternocleidomastoid and paracervical musculature bilaterally," and that the "[r]ange of motion testing of [plaintiff's] cervical spine elicits complaints of increased neck pain on extremes of motion." [AR at 202.] Dr. Schmidt also noted that plaintiff had "palpable tenderness over the lumbar spinous processes from L1 to S1, over the posterior superior iliac spine, lumbar paravertebral musculature, sacrum, iliac crests and sacroiliac joints, bilaterally," and that "[r]ange of motion testing of the lumbosacral spine elicits complaints of increased back pain on extremes of motion." [AR at 203.] He also found that plaintiff had decreased sensation in both calves and feet. [AR at 204.] Dr. Schmidt rendered the following diagnostic impressions: lumbar sprain/strain, cervical sprain/strain, right shoulder impingement, lipoma on the left proximal humerus, diabetes mellitus, peripheral neuropathy, depression, and erectile dysfunction. [Id.] Dr. Schmidt opined that:

> The gradual deterioration of [plaintiff's] lumbar spine is documented with the x-rays taken today at this facility. There is significant spinal stenosis secondary to facet arthropathy and

5

> discogenic pathology. The symptoms he is experiencing in his lower extremities are indicative of claudication, which is secondary to the spinal stenosis. The condition of his lumbar spine is not curable and he will not return to his pre-injury capacity. ... He is unable to work due to the significant symptomatology related to his lumbar spine, cervical spine, right shoulder and lower extremities.
>
> The pain in his right shoulder arises from subacromial impingement produced by the heavy lifting and repetitive activities and [sic] of his previous employment.
>
> ... Based upon his presentation today, he should be limited regarding standing and walking to a maximum of two hours in an [eight] hour workday. This includes consideration of the significant spinal stenosis found on the X-ray. **Based upon his statements and my medical evaluation, it is medically reasonable that this limitation would have been applicable since [the time] he stopped working [in] November 2006 due to his medical conditions.** ...
>
> Given that the pathology related to his musculoskeletal system is progressively worsening, surgical treatment may be necessary in the future to include right shoulder acromioplasty and decompression, cervical fusion, lumbar spine laminectomy, decompression and fusion.

[AR at 204-05 (emphasis added).] The ALJ gave no weight to Dr. Schmidt's diagnoses because Dr. Schmidt did not treat plaintiff and because "his diagnoses were offered nearly four years after [plaintiff's] date last insured." [AR at 21.]

The ALJ's reasons for rejecting Dr. Schmidt's opinions were not supported by substantial evidence. First, while the ALJ rejected Dr. Schmidt's opinions concerning plaintiff's impairments because Dr. Schmidt "[did] not appear to have treated [plaintiff]," an examining physician, by definition, is a physician who examines but "does not have ... an ongoing treatment relationship with [the claimant]." See 20 C.F.R. § 404.1502. Second, medical reports should not be disregarded solely on the basis that they are rendered retrospectively. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."). Rather, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Taylor v. Comm'r of Social Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011). Therefore, the fact that Dr. Schmidt's opinions were rendered after plaintiff's date last insured was not a clear and convincing reason to reject Dr. Schmidt's opinions concerning

plaintiff's impairments. This is especially true where, as here, Dr. Schmidt rendered an opinion concerning plaintiff's limitations during the relevant time period. See id. at 1232-33 (remanding where Appeals Council failed to consider opinion of examining physician who, after the date last insured, rendered an opinion concerning plaintiff's mental health before his date last insured). The ALJ in this case did not even discuss Dr. Schmidt's opinion that plaintiff's physical limitations owing to his "significant spinal stenosis" and other conditions could have been present as early as November 2006. [See AR at 21.] Remand is warranted on this issue.[1] See Lester, 81 F.3d at 830-31.

/
/
/
/
/
/
/
/
/
/
/
/
/

---

[1] As the ALJ's consideration on remand of Dr. Schmidt's opinions may impact on the other issues raised by plaintiff in the Joint Stipulation, the Court exercises its discretion not to address those issues in this Order. The Court notes, however, that if the ALJ finds upon remand that Dr. Schmidt's opinion is entitled to some weight, but also finds that the evidence concerning the onset date of any impairments plaintiff may have is "not definite," the ALJ should create a record that forms the basis for a determination regarding such an onset date. See Armstrong v. Comm'r of Social Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) ("If the medical evidence is not definite concerning the onset date and medical inferences need to be made, [Social Security Ruling] 83-20 requires the ALJ to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (internal citations omitted); see also Social Security Ruling 83-20.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate Dr. Schmidt's opinions. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 4, 2012

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE